IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SUPERIOR OFFSHORE INTERNATIONAL, INC., Plaintiff, | § § § § | |
| v. | § § | CIVIL CASE NO. H-11-3130 |
| LOUIS E. SCHAEFER, JR., *et al.*, Defendants. | § § § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion for Summary Judgment on Standing [Doc. # 82] filed by Defendants Louis E. Schaefer, Jr., James J. Mermis, Roger D. Burks, and R. Joshua Koch, Jr., to which Plaintiff Superior Offshore International, Inc. ("Superior") filed a Response [Doc. # 103], and Defendants filed a Reply [Doc. # 120]. Also pending is Defendants' Motion for Summary Judgment on Res Judicata [Doc. # 85], to which Plaintiff filed a Response [Doc. # 104], and Defendants filed a Reply [Doc. # 123]. Having reviewed the record and applied governing and other relevant legal authorities, the Court **denies** both Motions.

### I.   BACKGROUND

Prior to filing bankruptcy in April 2008, Superior provided subsea construction and commercial diving services to the oil and natural gas exploration industries. Schaefer founded Superior in 1986 and served as its CEO until August 2006.

Defendants were the only members of Superior's Board of Directors prior to the Initial Public Offering ("IPO") on April 20, 2007, and Schaefer was Chairman of the Board.

On April 24, 2008, Superior filed a voluntary petition under Chapter 11 in the United States Bankruptcy Court for the Southern District of Texas, and H. Malcolm Lovett, Jr. was appointed as the Plan Agent. In connection with Superior's bankruptcy case, the Bankruptcy Court approved a Plan of Liquidation and First Supplement (the "Plan"), including the appointment of a Post Confirmation Committee and a Post Confirmation Equity Subcommittee ("PCES"). The PCES was granted the right under the Plan to "review, prosecute and settle all claims and Causes of Action against [Superior's] former officers and directors for actions occurring prior to the Petition Date . . .." *See* Plan [BR Case 08-32590 Doc. # 1248], ¶ 7.10.

The PCES filed this lawsuit in Superior's name as an adversary proceeding in connection with Superior's bankruptcy. This Court withdrew the reference to the Bankruptcy Court by Order [Doc. # 6] entered August 25, 2011. Plaintiff alleges in its Amended Complaint [Doc. # 33] that Defendants breached the duty of care they owed Superior (Count One), breached the duty of loyalty and good faith (Count Two),

and engaged in self dealing (Count Three).[1] Specifically, Plaintiff alleges that Defendants breached their duties of care, loyalty and good faith to Superior, and engaged in self dealing, by approving a $28 million special dividend to Schaefer ("special dividend" claim) and giving Schaefer the full benefit of an increased IPO including an additional 1.725 million shares ("overallotment" claim), thus leaving Superior grossly undercapitalized because it received only $17.9 million from the IPO instead of the full $45 million that Superior needed in order to continue operating its business.  Plaintiff alleges also that Defendants breached their duty of care, loyalty and good faith to Superior, and engaged in self dealing, by seeking approval of an increase in Superior's revolving credit facility with JPMorgan from $20 million to $30 million, and entering into senior secured term loans with Fortis Capital Corp. without making full disclosure of the company's gross undercapitalization, projected revenue shortfalls, and the dramatic decline in utilization of Superior's vessels.  Plaintiff alleges further that Defendants Mermis and Burks breached their duty of care, loyalty and good faith to Superior, and engaged in self dealing, by failing to disclose and pursue other, more lucrative offers, for the vessel *Superior Achiever* that Superior was attempting to sell.

---

[1]   Plaintiff alleged in Count Four that Defendants Mermis, Koch and Burks engaged in insider trading, but Plaintiff dismissed that count voluntarily.

## II.   MOTION FOR SUMMARY JUDGMENT ON STANDING

### A.   *Bangor* Case

Defendants assert that Plaintiff lacks standing to assert the special dividend and overallotment claims against them because Plaintiff PCES did not own any Superior stock at the time the alleged misconduct occurred. In support of their argument, Defendants cite *Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co.*, 417 U.S. 703 (1974). In that case, the United States Supreme Court applied "the settled principle of equity that a shareholder may not complain of acts of corporate mismanagement if he acquired his shares from those who participated or acquiesced in the allegedly wrongful transactions." *See id.* at 710. The Supreme Court noted that the principle of equity had been "invoked with special force where a shareholder purchases all or substantially all the shares of a corporation from a vendor at a fair price, and then seeks to have the corporation recover against that vendor for prior corporate mismanagement." *See id.* The Supreme Court noted that shareholders would otherwise be allowed "to recoup a large part of the price they agreed to pay for their shares, notwithstanding the fact that they received all they had bargained for." *See id.* at 711. As a result, the Supreme Court held that stockholders who have purchased all, or substantially all, shares of a corporation from the alleged wrongdoers may not complain of acts of corporate mismanagement. *See id.* at 710-11. This is true

even if the lawsuit is brought in the name of the corporation rather than in the name of the new shareholders. *See id.* at 713.

In this case, however, Plaintiff did not purchase shares of Superior from Defendants who are alleged to have engaged in corporate mismanagement. Instead, Plaintiff PCES specifically obtained the right to sue Defendants from the Plan of Liquidation approved by the Bankruptcy Court in connection with Superior's bankruptcy. As a result, the *Bangor* decision, which involved the purchase of shares from the alleged wrongdoers, does not apply to deprive Plaintiff of standing to exercise its rights under the approved Plan and assert its special dividend and overallotment claims in this lawsuit.[2]

**B.   *Anadarko* Case**

Defendants argue also that Plaintiff lacks standing to bring the special dividend and overallotment claims under Delaware law. Defendants note that the Delaware Supreme Court held that directors of a wholly-owned subsidiary do not owe fiduciary

---

[2]   Additionally, the Supreme Court in *Bangor* noted in a footnote that "equitable principles might not prevent recovery where the effects of the wrongful acts continued and resulted in injury to present shareholders." *Id.* at 711 n.6. In this case, Plaintiff PCES argues that the effects of Defendants' alleged mismanagement, specifically the company's gross undercapitalization, continued after the IPO and resulted in injury to shareholders when Superior was forced to file a bankruptcy petition only a year after the IPO was completed. As a result, the fact that Plaintiff PCES was not itself a shareholder on the date the special dividend and overallotment were approved by Defendants does not preclude Plaintiff's standing to assert its special dividend and overallotment claims in this lawsuit.

duties to the prospective shareholders of that subsidiary after the parent declares its intention to spin-off the subsidiary.[3]  *See Anadarko Petroleum Corp. v. Panhandle Eastern Corp.*, 545 A.2d 1171 (Del. 1988).  Defendants argue that Schaefer was effectively the parent corporation of Superior because he was the sole shareholder.  The Court finds Defendants' argument unpersuasive.

First, when Defendants approved the overallotment of shares in the IPO on April 19, 2007, Schaefer was not the sole shareholder.  Additionally, Schaefer, an individual, is not a "parent corporation" that spun off Superior, as in *Anadarko*.

Moreover, courts that have considered the *Anadarko* decision have concluded, based on persuasive analysis, that the holding should not be read so broadly as to mean that the directors of a wholly-owned subsidiary owe no duties *to the subsidiary itself* (as opposed to potential shareholders of company spun off from the subsidiary), particularly where the subsidiary is insolvent or the challenged conduct by the directors led to insolvency.  *See, e.g., In re Touch Am. Holdings, Inc.*, 401 B.R. 107, 129 (Bkrtcy. D. Del. 2009) (holding that "the directors of a wholly-owned subsidiary owe fiduciary duties to both the subsidiary and to the sole shareholder, the parent

---

[3]  In *Anadarko*, it was uncontested that under Delaware law "a parent does not owe a fiduciary duty to its wholly owned subsidiary."  *See Anadarko*, 545 A.2d at 1174. Anadarko argued, however, that the spin-off situation established a market for Anadarko shares on a "when-issued" basis, thereby creating a fiduciary relationship with the prospective shareholders.  *See id.*

corporation"); *In re Scott Acquisition Corp.*, 344 B.R. 283, 286, 290 (Bkrtcy. D. Del. 2006) (holding that directors and officers of an insolvent wholly-owned subsidiary owe fiduciary duties to the subsidiary and to its creditors); *see also In re Southwest Supermarkets, L.L.C.*, 376 B.R. 281, 283 (Bkrtcy. D. Ariz. 2007) (holding that "Delaware law does impose fiduciary duties on the officers and directors of a wholly owned subsidiary that run directly to the subsidiary itself, and not only to its sole shareholder").

Texas courts have similarly limited the *Anadarko* holding when applied to the existence of a fiduciary duty by the directors of a wholly-owned subsidiary to the subsidiary itself. *See Raytheon Co. v. Boccard USA Corp.*, 369 S.W.3d 626 (Tex. App. – Houston [1st Dist.] 2012). In *Raytheon*, the Texas Court of Appeals noted that the Delaware Chancery Court in 2006 stated that directors of a wholly-owned subsidiary "owe a duty to the subsidiary not to take action benefitting a parent corporation that they know will render the subsidiary unable to meet its legal obligations." *Raytheon*, 369 S.W.3d at 634 n.7 (citing *Trenwick Am. Lit. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 203, (Del. Ch. 2006)). The *Raytheon* court noted also that the District Court for the District of Columbia held in *First Am. Corp. v. Al-Nahyan*, 17 F. Supp. 2d 10, 26 (D.D.C. 1998), that "the directors of a wholly-owned subsidiary owe the corporation fiduciary duties." *Raytheon*, 369 S.W.3d at 634

n.8. The *Raytheon* court noted that the Supreme Court of Delaware has stated that "a parent owes fiduciary duties to its subsidiary when that subsidiary is insolvent." *Id.* at 634 (citing *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101-02 (Del. 2007)).

As noted, Schaefer is not a parent corporation and was not the sole shareholder of Superior on April 19, 2007, when the overallotment decision was approved by Defendants. Moreover, the *Anadarko* decision is not as broad as Defendants argue. Instead, although Delaware law may not impose fiduciary duties running from the directors of a wholly-owned subsidiary to the prospective shareholders of a spin-off of that subsidiary, Delaware law would impose fiduciary duties on the officers and directors of a wholly-owned subsidiary to the subsidiary itself. This is particularly true where, as here, Defendants allegedly took action in connection with the special dividend and overallotment of IPO shares that, even though benefitting Schaefer, they allegedly knew would render Superior unable to meet its legal obligations. As a result, Delaware law would recognize a fiduciary duty by Superior's directors to Superior when the approved the overallotment of IPO shares to Schaefer and also, on April 16, 2007, when they approved the special dividend to Schaefer while he was the sole shareholder. Plaintiff PCES has standing to assert its special dividend and overallotment claims against Defendants.

### III.     MOTION FOR SUMMARY JUDGMENT ON *RES JUDICATA*

Defendants argue that Plaintiff's breach of fiduciary duty claim based on the special dividend and the overallotment are barred by the *res judicata* effect of their settlements on Bankruptcy Adversary actions filed against them by the Plan Agent in the Superior bankruptcy proceeding.  In each of the adversary proceedings against Mermis, Burks, and Koch, the Plan Agent sought to recover from that Defendant individually – as either a fraudulent or preferential transfer – any monetary or stock transfers to that Defendant.  In the adversary proceeding against Schaefer, the Plan Agent sought specifically to recover from Schaefer the special dividend paid to him. The Court previously held that the special dividend claim against Schaefer is barred by *res judicata*.  *See* Memorandum and Order [Doc. # 7] entered September 8, 2011.

Pursuant to the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (quoting *Allen v. McCurry,* 449 U.S. 90, 94 (1980)).  For the *res judicata* bar to apply, four elements must be established:  "(1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the

same claim or cause of action must be involved in both cases." *Id.* (quoting *In re Ark-La-Tex Timber Co.,* 482 F.3d 319, 330 (5th Cir. 2007)).

The Complaint in the pending case and Bankruptcy Court adversary proceedings were both filed on behalf of Superior. The PCES and the Plan Agent are in privity with Superior, which satisfies the "identity of parties" element of the *res judicata* analysis. *See Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992). Indeed, Plaintiff does not contest that this element has been met.

It is similarly uncontested that the United States Bankruptcy Court is a court of competent jurisdiction.

In this case, the adversary proceeding against each Defendant was concluded with the filing of a Stipulation of Dismissal in which the parties stipulated that they had "resolved the issues that formed the basis" of the adversary complaint. Under longstanding Fifth Circuit legal authority, the absence of a separate final judgment is not fatal to the *res judicata* bar. *See, e.g., Matter of West Texas Marketing Corp.*, 12 F.3d 497, 501 (5th Cir. 1994). The Fifth Circuit in *West Texas Marketing* held that the adversary proceeding "ended when the stipulations to dismiss were filed and the finality of that ending cannot be disturbed by later actions of the bankruptcy court." *Id.*; *see also Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 n.8 (5th Cir. 1993) (noting that a dismissal designated "with prejudice" is an adjudication on the

merits for purposes of *res judicata*). As a result, the stipulations of dismissal constitute a "final judgment" for purposes of the *res judicata* analysis.

To determine whether the same claims are involved in the two proceedings, the Fifth Circuit applies a "transactional test" that requires the two actions to be based on the same "nucleus of operative facts." *See Oreck*, 560 F.3d at 401-02. "[A] prior judgment's preclusive effect extends to all rights of the plaintiff 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] transaction arose.'" *Id.* at 402 (citing *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004) (quoting *Petro-Hunt, LLC v. United States,* 365 F.3d 385, 395-96 (5th Cir. 2004)). In the adversary proceedings against Mermis, Burks, and Koch, the Plan Agent sued each Defendant seeking return of money and shares of stock paid or transferred to that Defendant. For example, in the adversary proceeding against Defendant Koch, the Plan Agent sought to recover non-base salary compensation paid to Koch during 2007 and 2008, as well as 513,333 shares of Superior common stock transferred to Koch during that period of time. Unlike the adversary proceeding against Schaefer, the adversary proceedings against Mermis, Burks and Koch did not seek to recover from those Defendants the special dividend paid and the overallocated stock transferred to Schaefer. The claims in this case regarding the special dividend and the overallocated stock were not asserted in the

Mermis, Burks and Koch adversary proceedings. Similarly, in each adversary proceeding against Mermis, Burks and Koch, the Plan Agent sought to recover only those payments and transfers made to the named Defendant individually. In the special dividend and overallotment claims in this case, on the other hand, Plaintiff does not seek to recover any payments or transfers made to Mermis, Burks and/or Koch. As a result, these claims are not barred by *res judicata* as against Mermis, Burks, and/or Koch. This is true even though the Plan Agent alleged in each adversary that Superior was insolvent and/or grossly undercapitalized at the time of the IPO.

Contrary to Defendants' consistent reference to "*res judicata*" in their Motion, it appears Defendants may actually intend to assert that Plaintiff's special dividend and overallocation claims are barred by the doctrine of collateral estoppel because Superior's insolvency and undercapitalized condition were issues in the adversary proceedings and are issues in the claims in this case. Under that doctrine, "the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n. 5 (1979)). Because the adversary proceedings were settled, the undercapitalization issue was not "actually litigated" or

specifically addressed in the final judgment. Collateral estoppel accordingly does not apply to bar Plaintiff's special dividend and overallocation claims against Defendants Mermis, Burks and Koch.

## IV.  CONCLUSION AND ORDER

Based on the foregoing, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment on Standing [Doc. # 82] is **DENIED**. It is further

**ORDERED** that Defendants' Motion for Summary Judgment on Res Judicata [Doc. # 85] is **DENIED**.

SIGNED at Houston, Texas, this 20th day of **November, 2012**.

_____
Nancy F. Atlas
United States District Judge