## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| SUPERIOR OFFSHORE | § | |
| INTERNATIONAL, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL CASE NO. H-11-3130 |
| | § | |
| LOUIS E. SCHAEFER, JR., *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on Plaintiff Superior Offshore International, Inc.

("Superior")'s Motion to Preclude Certain Expert Testimony[1] [Doc. # 77] and Motion

to Strike or Ignore Defendants' Omnibus Statement of Facts[2] [Doc. # 114].  Also

pending are Motions for Partial Summary Judgment on Affirmative Defense of

Release filed by Defendants R. Joshua Koch [Doc. # 71], Louis E. Schaefer, Jr. [Doc.

# 80], and Roger D. Burks [Doc. # 81].[3]  Also pending is Plaintiff's Motion for

Summary Judgment on Its Claims for Self-Dealing and Diversion of Corporate

---

[1]    Defendants filed an Opposition [Doc. # 107] and Plaintiff filed a Reply [Doc. # 125].

[2]    Defendants filed an Opposition [Doc. # 117] and Plaintiff filed a Reply [Doc. # 127].

[3]    Plaintiff filed an Opposition [Doc. # 89] to Koch's Motion and a joint Opposition [Doc. # 100] to Schaefer and Burks's Motions.  Individual Replies were filed by Koch [Doc. # 93], Schaefer [Doc. # 115], and Burks [Doc. # 121].  Plaintiff filed a Motion for Leave to File a Surreply [Doc. # 94], to which Koch filed an Opposition [Doc. # 95].  The Court denies leave to file the surreply.

Opportunity[4] [Doc. # 79], Defendants' Motion for Summary Judgment on Elements of Causation and Damages[5] [Doc. # 83], Defendants' Motion for Summary Judgment on the Business Judgment Rule [Doc. # 84], and Defendants' Burks and James J. Mermis's Motion for Summary Judgment on the *Achiever* Claims [Doc. # 86].[6]

The Court has carefully reviewed the record and the applicable legal authorities. Based on this review, the Court **denies** the pending Motions.

## I.    BACKGROUND

Prior to filing bankruptcy in April 2008, Superior provided subsea construction and commercial diving services to the oil and natural gas exploration industries. Schaefer founded Superior in 1986 and served as its CEO until August 2006. Defendants were members of Superior's Board of Directors prior to an Initial Public Offering ("IPO") on April 20, 2007, and Schaefer was Chairman of the Board.

---

[4]    Defendants filed an Opposition [Doc. # 102] and Plaintiff filed a Reply [Doc. # 116].

[5]    Plaintiff filed an Opposition [Doc. # 105] and Defendants filed a Reply [Doc. # 119].

[6]    Plaintiff filed a Partial Response to the Motion for Summary Judgment on the Business Judgment Rule [Doc. # 106], to which Defendants filed a Reply [Doc. # 118].  Plaintiff filed a "Response to Defendants' Motion for Summary Judgment on the Business Judgment Rule on the Fortis Claim and Response to Burks' and Mermis's Motion for Summary Judgment on the *Achiever* Claims" [Doc. # 101], and Defendants Burks and Mermis filed a Reply in support of their Motion for Summary Judgment on the *Achiever* Claims [Doc. # 122].

On April 24, 2008, Superior filed a voluntary petition under Chapter 11 in the United States Bankruptcy Court for the Southern District of Texas, and H. Malcolm Lovett, Jr. was appointed as the Plan Agent.   In connection with Superior's bankruptcy case, the Bankruptcy Court approved a Plan of Liquidation and First Supplement (the "Plan"), including the appointment of a Post Confirmation Committee and a Post Confirmation Equity Subcommittee ("PCES").  The PCES was granted the right under the Plan to "review, prosecute and settle all claims and Causes of Action against [Superior's] former officers and directors for actions occurring prior to the Petition Date . . .."  *See* Plan [BR Case 08-32590 Doc. # 1248],  ¶ 7.10.

The PCES filed this lawsuit in Superior's name as an adversary proceeding in connection with Superior's bankruptcy.  This Court withdrew the reference to the Bankruptcy Court by Order [Doc. # 6] entered August 25, 2011.  Plaintiff alleges in its Amended Complaint [Doc. # 33] that Defendants breached the duty of care they owed Superior (Count One), breached the duty of loyalty and good faith (Count Two), and engaged in self dealing, waste of corporate assets and diversion of corporate opportunity (Count Three).[7]  Specifically, Plaintiff alleges that Defendants breached their duties of care, loyalty and good faith to Superior, and engaged in self dealing, by approving a $28 million special dividend to Schaefer ("special dividend" claim)

---

[7]   Plaintiff alleged in Count Four that Defendants Mermis, Koch and Burks engaged in insider trading, but Plaintiff dismissed that count voluntarily.

and giving Schaefer the full benefit of an increased IPO including an additional 1.725 million shares ("overallotment" claim), thus leaving Superior grossly undercapitalized because it received only $17.9 million from the IPO instead of the full $45 million that Superior needed in order to continue operating its business.  Plaintiff alleges also that Defendants breached their duty of care, loyalty and good faith to Superior by seeking approval of an increase in Superior's revolving credit facility with JPMorgan from $20 million to $30 million, and entering into senior secured term loans with Fortis Capital Corp. ("Fortis") without making full disclosure of the company's gross undercapitalization, projected revenue shortfalls, and the dramatic decline in utilization of Superior's vessels ("Fortis claim").  Plaintiff alleges further that Defendants Mermis and Burks breached their duty of care, loyalty and good faith to Superior by failing to disclose and pursue other, more lucrative offers, for the vessel *Superior Achiever* that Superior was attempting to sell ("*Achiever* claim").[8]

After the completion of discovery, Plaintiff and Defendants filed the pending motions.  Each of the motions is now ripe for decision.

---

[8]    Plaintiff in Count I asserts the breach of the duty of care claim as to the special dividend, overallotment, Fortis, and *Achiever* claims.  In Count II, Plaintiff asserts the breach of the duty of loyalty and good faith as to all four claims.  In Count III, Plaintiff asserts the self dealing, waste of corporate assets and diversion of corporate opportunity claim as to the special dividend and overallotment claims only.

## II.    MOTION TO PRECLUDE EXPERT TESTIMONY

Plaintiff seeks to exclude evidence from Defendants' experts pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  Witnesses who are qualified by "knowledge, skill, experience, training or education" may present opinion testimony to the jury.  *See, e.g., Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting FED. R. EVID. 702).  "A party seeking to introduce expert testimony must show (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.* (citing *Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 227 (5th Cir. 2007)).  The trial court acts as a "gate-keeper," making a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Id.* (quoting *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 243-44 (5th Cir. 2002); *Daubert*, 509 U.S. at 592-93 (1993)).  As the Supreme Court in *Daubert* made clear, however, the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.  Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of

attacking shaky but admissible evidence." *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *Daubert*, 509 U.S. at 596).

Defendants have identified and provided reports from expert witnesses Christopher M. James and Alan D. Bell. Plaintiff seeks to preclude James and Bell from presenting evidence regarding Superior's capitalization at the time of the IPO. Plaintiff argues that James bases his opinion on unreliable public information such as the views of security analysts and the prices at which Superior stock traded on the stock exchange following the IPO. Plaintiff similarly challenges Bell's reliance of the statements of securities analysts. Although such reliance on publicly-available information may not always be the preferred methodology, it could be an acceptable procedure when the company's stock is trading in an efficient market. This seems particularly true where, as here, the securities analysts on whom Defendants' experts relied worked for the underwriters who conducted due diligence analysis on Superior for approximately one year before the IPO and, therefore, would have access to more internal information than other analysts. The Court has reviewed the record and concludes that, for purposes of a non-jury trial, the challenges to the testimony of James and Bell go primarily to weight and not to admissibility.

Plaintiff seeks also to preclude James from presenting any opinions regarding its expert, Norman Dufour, who is expected to testify regarding the sale of the

*Achiever.*  Plaintiff argues that James is not qualified to provide expert testimony on the appraisal of marine vessels.  James does not, however, offer expert testimony on vessel appraisal generally.  Instead, he is expected to critique the factors and valuation methodology used by Dufour in his appraisal of the *Achiever*, including the validity of the allegedly unexplained change in his appraisal from $100 million in a business appraisal in 2007 to an appraisal of $135 million after retained by Plaintiff.  It appears that James would be qualified to offer this criticism of the methodology used by Plaintiff's expert.

Moreover, this case will be tried to the Court without a jury.  "Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."  *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000).  This is true because the Supreme Court's principal concern in *Daubert* was to prevent jury exposure to confusing and unreliable expert testimony. *See Daubert*, 509 U.S. at 595-97.  The Court in this case can easily determine during trial whether the proffered testimony from James and Bell is of any assistance, and can consider Plaintiff's arguments regarding the weight the Court should give that testimony.  The challenged testimony would not be excluded without a *Daubert* hearing, which the Court can more efficiently conduct during each witness's testimony at trial.  The Motion to Preclude Expert Testimony is denied without

prejudice to Plaintiff's challenge, through vigorous cross-examination, to the testimony during trial.

## III.   MOTION TO STRIKE OMNIBUS STATEMENT OF FACTS

Defendants prepared and filed an "Omnibus Statement of Facts and Legal Standards" ("Statement") in connection with their motions for summary judgment. Plaintiff has moved to strike that Statement because, as argued by Plaintiff, the Court is required to "hunt" through the Statement to locate support for each of Defendants' motions.  Plaintiff notes that its own "Statement of Material Facts Not Genuinely In Dispute" is cited in its briefing.  Defendants note correctly that, although they do not cite to their Statement, they cite to the actual record throughout their summary judgment briefing.  Plaintiff has failed to demonstrate that the Court should strike Defendants' Statement.

Defendants in their Opposition note that Plaintiff did not challenge factually any of the "undisputed facts" set forth in the Statement.  On that basis, Defendants ask the Court to deem each "fact" admitted by Plaintiff.  There is nothing in the rules of procedure that would require Plaintiff to admit or deny any of the factual matters in Defendants' Statement, and the Court denies the request to deem the statements "admitted."

The Court has not relied on either side's position regarding which facts are undisputed.  Instead, the Court has reviewed the record to determine whether there are genuine issues of material fact to be resolved by the Court at trial.  Plaintiff's Motion to Strike Omnibus Statement of Facts is denied, as is Defendants' request to deem those statements admitted.

## IV.    MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  The moving party bears the burden of demonstrating that there is no evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Nat'l Union Fire Ins. Co. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008).  If the moving party meets this initial burden, the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue for trial.  *See Hines v. Henson*, 293 F. App'x. 261, 262 (5th Cir. 2008) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278 (5th Cir. 2004)).  The Court construes all facts and considers all evidence in the light most favorable to the nonmoving party.  *Nat'l Union*, 532 F.3d at 401.

## V.    MOTIONS FOR SUMMARY JUDGMENT REGARDING RELEASES

In late 2007 and early 2008, Koch, Schaefer, and Burks each entered into an agreement with Superior that included a mutual release of claims existing as of the date of the release.  The Release language is quite broad, releasing any and all claims "of any kind whatsoever, known or unknown, whether in law or equity and whether arising under federal, state, or local law, which [the releasing parties] had, now have, or may have or claim to have in the future . . .."  The Release, however, states specifically that there is no release from "any claims arising out of the fraud or willful misconduct" of the individual defendant.  Plaintiff argues that the breach of fiduciary duties as alleged in this case constitute claims arising from willful misconduct. Plaintiff argues also that the releases are void under Texas law as a matter of public policy because the individual defendant failed to disclose material matters (specifically, the alleged breaches of fiduciary duty) to Superior before entering into the mutual releases.

Except for the existence and the terms of the mutual releases, all material facts are in dispute.  The allegations of "willful misconduct" and the argument regarding public policy rely on the existence of breaches of fiduciary duty as alleged by Plaintiff.  If Plaintiff cannot prove that Koch, Schaefer, and Burks willfully breached their fiduciary duties in this case, there would be no "willful misconduct" or violations

of public policy.  In that situation, the releases would be valid and enforceable.  If, on the other hand, Plaintiff satisfies its burden to prove that Koch, Schaefer, and/or Burks willfully breached their fiduciary duties, the claims would not be released.  The existence of genuine issues of material fact precludes summary judgment on Defendants' affirmative defense based on the releases.

## VI.   REMAINING MOTIONS FOR SUMMARY JUDGMENT

### A.   Plaintiff's Motion for Summary Judgment as to Claims of Self-Dealing and Diversion of Corporate Opportunity

Plaintiff seeks summary judgment on its claims for self-dealing and diversion of corporate opportunity in connection with the special dividend and the overallotment to Schaefer.[9]  This Court has previously ruled that Delaware law would recognize a fiduciary duty by Superior's directors, including Defendants Mermis, Burks, and Koch, to Superior when they approved the overallotment of IPO shares to Schaefer and when they approved the special dividend to Schaefer.  *See* Memorandum and Order [Doc. # 131], p. 8.

---

[9]   Defendants argue that the diversion of corporate opportunity and self dealing claims are not separate, independent causes of action but are, instead, covered by the breach of fiduciary duty claims, citing *In re eBay, Inc. S'holder Litig.*, 2004 WL 253521 (De. Jan 23, 2004); *In re Midway Games, Inc.*, 428 B.R. 303, 318 (Bankr. D. Del. 2010). Although Defendants' legal authority does not support the rule they assert, Plaintiff did not respond to this argument and, indeed, argues its motion for summary judgment on these issues in terms of a breach of fiduciary duty.  Whether treated as independent claims or as breaches of fiduciary duty, neither Plaintiff nor Defendants are entitled to summary judgment on the claims regarding the special dividend and the overallotment of IPO shares to Schaefer.

Plaintiff argues that to satisfy applicable fiduciary duties, Defendants must meet the "entire fairness" test.  Under Delaware law, a director who has a financial or other personal interest in a transaction that does not benefit the corporation or all stockholders generally is "required to demonstrate [his] utmost good faith and the most scrupulous inherent fairness of transactions."  *See Mills Acquisition Co. v. MacMillan Inc.*, 559 A.2d 1261, 1280 (Del. Super. 1989).

Defendants respond that Delaware law provides a safe harbor for interested transactions if the material facts of the transaction are known to the board of directors and the transaction is approved by a majority of the disinterested directors.  *See* Opposition [Doc. # 102], pp. 9-10 (citing 8 DEL. CODE § 144(a)(1); *Schoon v. Smith*, 953 A.2d 196, 207 n.38 (Del. 2008)).  If the disinterested directors approve the transaction, the business judgment rule, which "is a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company," governs.  *See Benihana of Tokyo, Inc. v. Benihana, Inc.*, 906 A.2d 114, 120 (Del. 2006) (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

In this case, the determination of which standard applies is a fact intensive inquiry, and the material facts are in dispute.  There is a fact dispute regarding whether Mermis, Burks and Koch had a financial interest in the special dividend or the

overallotment to Schaefer.  There is a fact dispute regarding whether Schaefer's sale of the overallotment shares involved a "corporate opportunity."  There is a fact dispute regarding whether Mermis, Burks and Koch lacked independence or were otherwise interested such that the business judgment rule would be rebutted and the "entire fairness" standard would apply.  There is a genuine fact dispute regarding whether, in connection with the special dividend, all existing shareholders received a proportionate share.  There are genuine issues of material fact regarding the adequacy of any disclosures made to the disinterested directors prior to the approval of the overallotment and special dividend to Schaefer, and whether the overallotment and special dividend were fair to Superior.

These genuine issues of material fact preclude a decision as a matter of law as to whether the business judgment rule or the "entire fairness" standard applies to Plaintiff's claims regarding the overallotment and the special dividend.  Whichever standard applies, there are genuine issues of material fact regarding whether Defendants violated the relevant standard.  As a result, summary judgment on the overallotment and special dividend claims is denied.

### B.  Defendants' Motion for Summary Judgment on the Elements of Causation and Damages

Defendants seeks summary judgment on the basis of there being no proximate cause between their conduct and Plaintiff's alleged damages.  In support of their

motion, Defendants challenge the expert opinions offered by Plaintiff's expert, Daniel Lentz.  Plaintiff offers Lentz's opinions, set forth in his initial report and his rebuttal report, regarding the detrimental effect on Superior of the special dividend and the overallotment of IPO shares to Schaefer.  Lentz opines also regarding Superior's undercapitalization, stating that Superior could have survived as a viable business entity had it been adequately capitalized.  This evidence raises a genuine issue of material fact regarding whether Defendants' alleged misconduct caused Superior's damages.

Defendants identify a number of post-IPO events that they assert broke the chain of causation.  These events include a debtor's failure to pay almost $30 million in invoices, the subprime credit crisis, and unexpected problems with the vessels *Gulmar Falcon* and *Superior Endeavor*.  Lentz opines, however, that these events were foreseeable and/or survivable if Superior had been adequately capitalized.

The Court concludes that the Lentz opinions raise a genuine issue of material fact on causation and damages.  Defendants have not moved to exclude Lentz's testimony, which they can challenge at trial through cross-examination.  The Court denies Defendants' Motion for Summary Judgment on Causation and Damages.[10]

---

[10]     Defendants note that Plaintiff's calculation of damages does not account for the proceeds received from the sale of the *Achiever* and does not account for Schaefer's ownership of Superior.  These issues will be resolved after the Court considers the
(continued...)

### C.    Defendants' Motions for Summary Judgment on the Business Judgment Rule and on the *Achiever* Claims

Defendants seek summary judgment on Counts I and II of the Amended Complaint based on the business judgment rule, both as to the Fortis claim and the *Achiever* claim.[11] On each claim, Defendants assert that Plaintiff cannot overcome the business judgment rule.[12]   The business judgment rule provides a rebuttable presumption that corporate directors exercise their business judgment in good faith. The presumption can be rebutted in a number of ways, including a showing of any of the following:  (1) a majority of the board of directors is interested; (2) the board is

---

[10]    (...continued)
testimony of the competing experts on damages if a damages calculation becomes necessary.

[11]    In the Motion for Summary Judgment on the Business Judgment Rule [Doc. # 84], Defendants also seek summary judgment on the overallotment and special dividend claims.  As discussed above, genuine issues of material fact preclude summary judgment on these claims.    Additionally, unlike the special dividend and overallotment claims, Plaintiff does not dispute that the business judgment rule, rather than the "entire fairness" test, applies to the Fortis and *Achiever* claims.

[12]    As noted in this Court's Memorandum and Order [Doc. # 52] entered April 30, 2012, on Count I, the duty of care claim, the Delaware Code recognizes and enforces exculpatory clauses in a corporation's Certificate of Incorporation to eliminate a director's liability for breach of fiduciary duty.  *See* 8 DEL. CODE § 102(b)(7).  In the Amended Complaint, Plaintiff alleges that Defendants Mermis and Burks were acting as officers of Superior rather than as corporate directors.  There exists a genuine issue of material fact regarding the capacity in which Mermis and Burks were acting when they engaged in the conduct that forms the basis for the special dividend, overallotment, Fortis, and *Achiever* claims.  Should the Court find that Mermis and Burks were acting as directors and not as officers, the exculpatory clause in the Certificate of Incorporation would preclude liability for breach of the duty of care as to these two defendants.

dominated and controlled by the interested directors such that the other directors lacked independence; (3) the directors did not act in good faith; (4) the directors acted in a manner that cannot be attributed to a rational business purpose; or (5) the directors reached their decision by a grossly negligent process that includes the failure to consider all material facts that are reasonably available. *See Krasner v. Moffett*, 826 A.2d 277, 287-88 (Del. 2003); *Telxon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002); *Brehm v. Eisner*, 746 A.2d 244, 264 n.66 (Del. 2000).  The business judgment rule is not rebutted, however, simply because the directors make decisions that cause the company to suffer losses, even catastrophic losses.  *See In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 130 (Del. Ch. 2009).

 With reference to the Fortis claim, Plaintiff has presented evidence that, prior to the IPO, Superior negotiated a secured loan facility with Fortis that replaced a $110 million Term Loan obtained in February 2007.  Plaintiff states that the new Fortis loan was capped at $60 million rather than the prior $110 million, and that the $60 million was "woefully insufficient" to complete Superior's capital expenditure plan.  An additional $40 million would be available only if Superior entered into a long-term charter for the *Achiever* on terms agreed to by Fortis.  At the same time, Superior's revolving credit facility with JPMorgan was increased to $30 million.

Plaintiff alleges and presents evidence that Defendants Mermis, Koch and Burks breached their fiduciary duties by obtaining board approval of the JPMorgan and Fortis credit facilities without providing material information to the board's independent directors.  This information included Superior's undercapitalization, revenue shortfalls, and the continued decline in the use of Superior's vessels.  Plaintiff alleges, with supporting evidence, that the board would have taken different action in connection with the JPMorgan and Fortis loans had the omitted information been provided, thereby saving Superior from default on these two loan agreements.

With reference to the *Achiever* claim, Plaintiff's evidence indicates that Superior sold the *Achiever* to Hornbeck Offshore Services, Inc. ("Hornbeck") for sufficiently less than its value.  Plaintiff claims that Mermis and Burks failed to disclose other options for the sale of the vessel that were more beneficial to Superior than the sale to Hornbeck.  For example, Plaintiff claims that Eidesvek Shipping, S.A., had made a firm offer to purchase the *Achiever* for $135 million.

Defendants argue that they are entitled to summary judgment on the Fortis and *Achiever* claims in Counts I and II because Plaintiff has not presented evidence to rebut the business judgment rule.  This argument lacks merit.  Plaintiff has presented evidence that raises a genuine issue of material fact regarding whether the Defendant directors acted in a manner that cannot be attributed to a rational business purpose.

For example, Plaintiff's expert Lentz has stated his opinion that an earlier, more advantageous sale of the *Achiever* would have reduced Superior's need for the Fortis loan and would have increased Superior's liquidity. Plaintiff has presented deposition testimony from Superior's independent director, James Persky, that he would have wanted to know the withheld information regarding Superior's financial condition before voting whether to approve the Fortis and JPMorgan loan arrangements. Plaintiff has presented evidence that Mermis and Burks failed to disclose other, more lucrative offers for the *Achiever*, and Persky testified that he would have wanted to know of these other offers before voting to approve the sale to Hornbeck.

Defendants have presented evidence to explain their conduct. For example, Mermis and Burks have presented evidence that the other offers for the *Achiever* did not meet Superior's urgent need for liquidity and, therefore, were not more advantageous than Hornbeck's offer. The competing evidence raises a genuine issue of material fact that must be decided after trial.

## VII.   <u>CONCLUSION AND ORDER</u>

Based on the foregoing, it is hereby

**ORDERED** that Plaintiff's Motion to Preclude Certain Expert Testimony [Doc. # 77] is **DENIED WITHOUT PREJUDICE**. It is further

**ORDERED** that Plaintiff's Motion to Strike or Ignore Defendants' Omnibus Statement of Facts [Doc. # 114] is **DENIED**.  It is further

**ORDERED** that Plaintiff's Motion for Leave to File a Surreply [Doc. # 94] and the Motions for Summary Judgment on Affirmative Defense of Release by Koch [Doc. # 71], Schaefer [Doc. # 80], and Burks [Doc. # 81] are **DENIED**.  It is further

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 79], Defendants' Motions for Summary Judgment [Docs. # 83, # 84, and # 86] are **DENIED**.

SIGNED at Houston, Texas, this **11th** day of **December, 2012**.

Nancy F. Atlas
United States District Judge